USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/23/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOSEPH SCALI,

                Defendant.

No. 16-CR-466 (NSR)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge

    Defendant Joseph Scali ("Defendant") is charged in a ten-count indictment with (1) mail fraud in violation of 18 U.S.C. § 1341; (2) structuring to evade currency transaction reports in violation of 31 U.S.C. § 5342(a)(3); (3)– (4) false statements in violation of 18 U.S.C. § 1001; (5) corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Laws in violation of 26 U.S.C. § 7212(a); (6) tax evasion for the year 2011 in violation of 26 U.S.C. § 7201; (7) tax evasion for the year 2012 in violation of 26 U.S.C. § 7201; (8) obstruction of justice in violation of 18 U.S.C. § 1503; (9) perjury in violation of 18 U.S.C. § 1623; and (10) mail fraud in violation of 18 U.S.C. § 1341. (Superseding Indictment ("S2") 2, ECF No. 80.) Before the Court is the Defendant's motions *in limine*. (Defendant's First Motion *In Limine* ("Def. Mot."), ECF No. 91; Defendant's Second Motion *In Limine* ("Def. Second Mot."), ECF No. 126.) For the reasons set forth below, the Defendant's motions are denied or otherwise moot.[1]

---

[1] This Court's January 18, 2018 Opinion and Order addressed multiple issues raised in the Defendant's motions including: (1) the admission of the Defendant's misdemeanor convictions in state court for the unauthorized practice of law; (2) the admission of Defendant's tax payment history concerning his property in West Hartford, Connecticut; and (3) documents pertaining to the Defendant's tax payment history for the years not subject to the Indictment. *See United States v. Scali*, 16-CR-466, 2018 WL 461441 (S.D.N.Y. Jan. 18 2018).

1

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y.2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–cr–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S. Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir.2008).

## DISCUSSION

The Court assumes familiarity with the facts and allegations in this case. *See United States v. Scali*, 16-CR-466, 2018 WL 369195 (S.D.N.Y. Jan. 9, 2018); *United States v. Scali*, 16CR-466, 2018 WL 461441 (S.D.N.Y. Jan. 18 2018). The Court consolidates the Defendant's two Motions which, in aggregate, raise four issues. The Court takes each in turn.

### Government's Witnesses

The Defendant moves to preclude the "general testimony" and expert testimony of three witnesses: attorneys Matthew Lee-Renert, Julie Allsman, and Christine Fecko. (Def. Mot. 7.)[2] For the following reasons, the Defendant's motion is denied.

A Lay witness may testify to matters as to which they have personal knowledge. Fed. R. Evid. 602. A lay witness may also offer opinion testimony when it is: (1) "rationally based on the witness's perception"; (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 702 governs the parameters of expert testimony.

In this case, the Government intends to use the three witnesses in question to provide factual or lay opinion testimony. (Govt. Opposition to Def. Motions *In Limine* (Govt. Opp.) 2, ECF No. 93.) The Government specifically noted that they do not wish to use the witnesses as experts. (*Id.*)[3] The first witness in question, Lee-Renert, is the Principal Attorney for the New York State Grievance Committee for the Ninth Judicial District. Lee-Renert has served as

---

[2] The Defendant also moves to preclude discussions about the complaints underlying the New York and S.D.N.Y. Grievance Committee proceedings against the Defendant. (Def. 7–8.)This Court addressed the issue in its January 18, 2018 opinion. *Scali*, 2018 WL 461441, at * 2–3. Thus, the issue is moot.

[3] The Government did provide notice of an expert witness in an "abundance of caution" before having determined that it would not seek to admit the witnesses as experts. (Gov. Mot. 2.)

3

counsel to the New York Grievance Committee for about twenty-two years and is responsible for investigating complaints of professional misconduct made against attorneys. (*Id.*) The Government expects him to testify generally about the process by which attorneys become members of the New York State Bar, the relevant Rules of Professional Conduct, the disciplinary process for attorneys in New York, and restrictions placed on suspended or disbarred attorneys. Lee-Renert is also expected to testify from his own personal knowledge about the relevant facts of the New York Grievance Committee proceedings against the Defendant. (*Id.* 2–4.)

The second witness, Julie Allsman, has served as counsel to the S.D.N.Y. Grievance Committee since 2011. The government intends to offer Allsman's testimony concerning the general background of the S.D.N.Y. Grievance Committee procedures, her role in receiving, investigating, and presenting disciplinary referrals to the committee, how such referrals are handled generally, and is expected to testify about her own personal knowledge concerning the relevant facts of the S.D.N.Y. disciplinary proceedings against the Defendant. (*Id.* 4–5.)

The third witness, Fecko, has served as general counsel of the Interest on Lawyers Account ("IOLA") Fund of New York ("IOLA Fund") since 2011. The Government expects Fecko to testify about IOLA accounts generally, and from her own personal knowledge about the facts of the case including the records maintained by the IOLA Fund for the Defendant's Attorney Trust Account and how the IOLA fund allegedly received interest "sweeps" from the Defendant's account from at least January 2010 through July 2013. (Govt. Mot. 5–6.)

The Defendant objects to the Government's use of the three witnesses to obtain general testimony. Specifically, he argues that the witnesses should not testify as to how the agencies which employ them function, nor should they provide expert opinions about the Defendant's conduct. (Def. Mot. 7.) This general testimony, the Defendant posits, is irrelevant to the federal

criminal prosecution. (Defendant's Reply in Further Support of First Motion *In Limine* ("Def. First Reply") 7, ECF Dock. No. 97)

The Defendant's motion is denied. First, the testimony concerning how the agencies which employ the witnesses function is relevant to the charges in the Second Superseding Indictment. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Here, the testimony provides background information and context concerning the New York and S.D.N.Y. grievance proceedings. The general testimony would also provide background information and context for IOLA accounts. The grievance proceedings and IOLA accounts are subjects that are typically unknown to the common juror and certainly require explanation and context. As a result, this general testimony from attorneys with personal knowledge of IOLA accounts and the New York and S.D.N.Y. grievance committees would assist the jury in understanding the rest of their testimony. The general testimony is not unduly prejudicial to the Defendant because it is not substantially outweighed by a danger in Rule 403.

Second, the Government has indicated that none of the witnesses will be providing expert testimony. To constitute an expert witness, the testimony must be based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702(a); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–90 (1993). Further, "[t]estimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008) (citing *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994)).

Allsman and Fecko are lay witnesses who will provide fact testimony and, thus, are not expert witnesses. The Government indicates that they will not be opining on the propriety or

5

impropriety of the Defendant's conduct at issue. (Govt. Mot. 11.) These two witnesses will testify based solely on their personal knowledge of their respective agencies and the Defendant's actions. Further, Allsman and Fecko are not testifying as to scientific, technical, or specialized knowledge because they are providing fact testimony concerning their respective agencies, as to which they have personal knowledge. *See United States v. Ahmed*, 14-CR-277 (DLI), 2016 WL 3647686, at *12–13 (E.D.N.Y. July 1, 2016); *United States v. Ghavami*, 23 F. Supp. 3d 148, 171 (S.D.N.Y. 2014). These two witnesses will simply provide background information concerning IOLA accounts and the New York State Grievance Committee as well describing their personal accounts of the Defendant's actions. Thus, Allsman and Fecko are lay fact witnesses.

Lee-Renert is a lay witness who will provide fact and opinion testimony, and thus, is not an expert witness. The Government submits that Lee-Renert will provide background information concerning the New York Grievance Committee and will also testify about the Defendant's New York grievance proceedings based on his personal knowledge. The Government anticipates Lee-Renert's testimony will also include descriptions of the New York Rules of Professional Conduct governing attorney trust and escrow accounts and may include testimony as to whether any of the Defendant's uses of his Attorney Trust Account were prohibited by the New York State Rules of Professional conduct based on Lee-Renert's personal knowledge of the rules and the Defendant's actions. Although this type of testimony closely mirrors the use of hypothetical questions with expert witnesses, such a targeted and narrow use of opinion testimony, based on the witnesses' personal knowledge, is considered lay opinion testimony. *See United States v. Cuti*, 720 F.3d 453, 460 (2d Cir. 2013).

In *Cuti*, the Second Circuit held that the answers to hypothetical questions posed to two professional accountants who were not qualified as experts constituted both factual and lay

opinion testimony. *Cuti*, 720 F.3d at 459. In that case, two accountants were called to testify "as to how they had accounted for the proceeds from [] fraudulent transactions; how they would have accounted for the transactions had they been aware of the full facts; and how the material information that was withheld from them led to misstatements in the company's financial statements." *Id.* at 456. Prior to answering the hypothetical questions, the accountants explained the relevant rules governing the accounting of real estate concession transactions. *Id.* at 457. The Court held that their answers constituted lay fact and opinion testimony because the inferences the accountant were "asked to make in answering the hypothetical questions was limited by the factual foundation laid in earlier admitted testimony and exhibits, the factual nature of the hypotheticals, and the witnesses' reasoning, which was based on undisputed accounting rules. These limitations left little room for the witnesses to engage in speculation and ensured that their testimony fell near the fact end of the fact-opinion spectrum." *Id.* at 458. Further, since the witnesses explained the applicable accounting rules in detail, the thought process employed by the witnesses when answering the hypothetical question was straightforward and easily discernible by the jurors. *Id.* at 458.

The Court also admitted the accountant's testimony as lay opinion testimony under Rule 701 because it did not involve the application of technical, scientific or specialized knowledge. The accountant's testimony was not rooted exclusively in their expertise, but rather, on the impact of certain facts in the performance of their task. This type of testimony involves "a process of reasoning familiar in everyday life" and was thus admissible as lay opinion testimony. *Id.* at 460 (quotation and citation omitted), compare with *United States v. Natal*, 849 F.3d 530, 536–537 (2d Cir. 2017) (holding that testimony concerning cell phone tower operation in which expert advised would require analyzing factors such as "radio interference, tower

7

availability, and the line of sight between a phone and a tower" required expert testimony because it was based on scientific, technical or other specialized knowledge under Rule 702).

In this case, Lee-Renert's testimony constitutes lay fact and opinion testimony because his testimony will be "limited by the factual foundation laid in earlier admitted testimony and exhibits, the factual nature of the hypotheticals, and the witnesses' reasoning, which [is] based on undisputed [rules of professional conduct]." *See Cuti*, 720 F.3d. at 458. Further, it will not involve the use of scientific, technical, or specialized knowledge because the testimony will involve the witnesses' personal knowledge, use of straight forward rules, and a process of reasoning familiar to everyday life. Lee-Renert's anticipated testimony will allegedly be based solely on his personal knowledge of the Defendant's use of the Attorney Trust Account in question, the pertinent New York Rules of Professional Conduct which will be explained to the jury, and his reasoning will allegedly be evident to the jury. *Id.* at 460. Thus, Lee-Renert will offer both lay fact and opinion testimony of the sort sanctioned in *Cuti*.

For the foregoing reasons, Defendant's motion is denied. The Court notes that this decision does not foreclose the Defendant's right to object to the relevancy of these witnesses' testimony at the time of trial, nor to request a limiting instruction.

### Use of Unspecified 404(b) Evidence

The Defendant objects to the introduction of unspecified commercial disputes the Defendant had with vendors, clients, or former counsel. (Def. Mot. 12.) The Defendant argues that these unspecified commercial disputes are irrelevant to any issue in dispute and would be unduly prejudicial. The Government posits that they do not intend to introduce evidence pursuant to Federal Rules of Evidence 404(b) of any disputes the Defendant had with clients other than

those that are directly relevant to the charged offenses. The Government submits that they have provided proper notice as to the other acts evidence it intends to introduce. (Govt. Opp. 23)

The Court denies the motion to exclude the unspecified commercial disputes the Defendant had with vendors, clients, or former counsel pursuant to Rule 404(b) because of the lack of particularity in the Defendant's request and the apparent lack of a palpable dispute between the parties. The Court reserves judgment as to the introduction pursuant to Rule 404(b) of any specific commercial disputes, assuming that the Government provides proper notice pursuant to Rule 404(b)(2).

## Use of Certain Witnesses

The Defendant's motion to preclude six witnesses on the basis of relevancy and attorney-client privilege is denied. The Defendant argues that the six witnesses—Gail Erickson, Sean Clark, Ronnie Simmons, Jared Sharf, Peter Thomson, and Jacqueline Gonzalez— will not offer relevant, or otherwise admissible, testimony. (Def. Second Mot. 4–7.) The Government posits that the Defendant's objection to the six witnesses is premature and that, in the alternative, all six witnesses will offer relevant and admissible testimony.

The Court denies Defendant's motion at this time.[4] At this juncture, the six witnesses in question appear to offer relevant and admissible testimony.

Gail Erickson, who worked as Defendant's paralegal for about five years, is anticipated to testify about the Defendant's custom and practice of dictating correspondence to her and to the Defendant's mother, Barbara Scali. This testimony is relevant to Count One of the Second Superseding indictment because it relates to the Defendant's responsibility for the content of communications between the Defendant and Peter Thompson—the attorney for the prospective

---

[4] This finding does not preclude the Defendant from objecting to the relevancy of the witnesses' testimony at trial.

9

buyer in the failed land transaction at issue in Count One. The testimony is also relevant to the defense that the Defendant's mother, Barbara Scali, authored letters on the Defendant's behalf without his knowledge.

Sean Clark, an attorney for the Town of West Harford, is expected to testify about the Defendant's failure to timely pay property taxes on his West Hartford home. This testimony is relevant to the Defendant's tax history concerning the West Hartford home, which is probative of the Defendant's *mens rea* in the tax evasion counts. Thus, the Defendant's motion is denied.

Ronnie Simmons, a majority owner of a company which did business with the Defendant, is expected to testify that the Defendant made a $100,000 investment in his company. This testimony is relevant to the Government's argument that the Defendant made the investment using a portion of the monies derived from the mail fraud charge at issue in Count One. The use of the monies is also relevant to the tax related crimes charged in Counts Five through Seven because the monies at issue allegedly constituted personal and purportedly reportable income. Thus, the Defendant's motion is denied.

Jared Sharf, the Defendant's former tax attorney, is expected to testify about information and documents provided to him by the Defendant for the purposes of drafting correspondence to the IRS with respect to Counts Three through Seven[5] of the Superseding Indictment. (Govt. Opp. to Def. Second Motion *In Limine* ("Govt. Second Opp.") 4–5, ECF No. 132.) The Defendant moves to bar the Government from compelling Sharf's testimony in their case-in-chief on the grounds that it may violate the attorney-client privilege. (Def. Second Mot. 5.) The Court denies the motion at this time. First, the Government submits that it intends to question Scharf on issues

---

[5] Counts Three through Seven charge the Defendant with making false statements to IRS officers on two occasions, corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Laws, and two counts of tax evasion.

10

which do not include communications between the Defendant and Scharf protected by the attorney-client privilege.[6] (Govt. Second Opp. 5.) Second, it is still unclear if the Defendant will waive the attorney-client privilege as to these communications by appropriately raising an advice of counsel defense. *See United States v. Wells Fargo Bank N.A.*, No. 12–CV–7527, 2015 WL 3999074, at *2 (S.D.N.Y. June 30, 2015) (noting the "well-established principle that where a party asserts an advice-of-counsel defense, that party impliedly waives any privilege that would otherwise attach to communications between him and his counsel"). As a result, the Court is unable to ascertain the extent of the Defendant's waiver of the attorney-client privilege at this time. Accordingly, the Defendant's motion is denied.

Peter Thompson, one of the attorneys who represented the prospective buyer in connection with the failed land transaction, is expected to testify: (1) that the Defendant held himself out as the attorney for Opal Industries, the seller in the land transaction at issue in Count One; (2) that the prospective buyer sent the Defendant a total of about $1.67 million to be held in escrow in connection with the land transaction; (3) about the history of the negotiations; (4) and that the Defendant represented that the prospective buyer's funds would remain in escrow. This testimony is relevant to the mail fraud charge in Count One because it provides important facts about what transpired and speaks to the zeitgeist of the land transaction at issue. Thus, the Defendant's motion is denied.

---

[6] Specifically, the Government argues that the Defendant relinquished the attorney-client privilege as to the documents that the Defendant intended to send to the IRS in connection with his taxes. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (The privilege . . . protects communications between a client and its attorney that are intended to be, and in fact were, kept confidential. A party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential.); *see also Bradley v. C.I.R.*, 209 Fed. App'x 40 (2d Cir. 2006) (noting that it could be reasonably inferred that Defendant waived the attorney-client privilege after the Defendant's tax attorney disclosed documents to accountants, who then disclosed the documents to the IRS).

Defendant also objects to the use of Thompson as a witness because the Government did not provide the Defendant with relevant records. (Def. Second Mot. 6.) The Government posits that it has produced, or will produce, all relevant records and 3500 material on or before the Court-ordered deadline. (Govt. Second Opp. 9.) The issue of whether or not the Government has produced all records relevant to Thompson is therefore unripe, and, thus, the Court will deny the Defendant's motion.[7]

Finally, Jacqueline Gonzalez, a former client of the Defendant, is expected to testify about the Defendant's representation of her mother. The Defendant represented Gonzalez's mother in connection with an eviction matter in Westchester County Surrogate's Court after the Defendant had been suspended from practicing law in New York State. Gonzalez's testimony, which consists of her own involvement in her mother's case and her interactions with the Defendant, is relevant to the mail fraud charge in Count Ten because it speaks to the Defendant's alleged unauthorized practice of law and the payments made to the Defendant. The Defendant's motion is denied.

### Document's Pertaining to Defendant's Investor Funds

The Defendant's motion to preclude documents pertaining to the Defendant's use of funds generated through the land transaction at issue in Count One is denied. The Defendant argues that the use of these funds "is not at issue," that expending time at trial pursuing how these funds were spent is not relevant, and is concerned about the Government's purpose in using this information. (Def. Second Mot. 7–8.) The Government posits that the use of the proceeds at issue is probative of: (1) the existence and fraudulent nature of the scheme itself; (2) the

---

[7] The Defendant also seeks a ruling in advance of trial as to whether communications between Mr. Thompson and Opal's lead investor concerning the Opal Industries Pennsylvania land transaction are privileged. (Def. Second Mot. 6.) The Court reserves judgment on this issue because the request is premature.

12

Defendant having spent the funds without authorization, which is probative of the Defendant's fraudulent intent; (3) the Defendant's corrupt endeavor to obstruct and impede the due administration of the internal revenue laws; and (4) the tax evasion charges for the years 2011 and 2012.

The evidence of the use of funds is relevant to the existence, and fraudulent nature, of the scheme charged in Count One. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). The use of the funds has a tendency to make the fact that a fraudulent scheme existed more probable because it substantiates the Government's claims that the Defendant used the funds from the Attorney Trust Account for personal transactions—a prohibited action. Further, the use of the funds is relevant to the allegation that he spent the funds without authorization. The probative value of the evidence is not substantially outweighed by any dangers because of its narrow and limited use.

The evidence is also probative of the Defendant's corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Laws and the tax evasion charges for the years 2011 and 2012. If these funds were personal income, they would allegedly be reportable, and thus, are relevant to the aforementioned charges. The probative value of this evidence is not outweighed by any dangers because of its narrow and limit use. Thus, the Defendant's motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Defendant's *motion in limine* is denied. The Clerk of Court is respectfully directed to terminate the motions at ECF Docket Number 91 and 126.

Dated: January 25 2018  
       White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge