UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOSEPH SCALI,

Defendant.

No. 16-CR-466 (NSR)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge

Defendant Joseph Scali ("Defendant") is charged in a ten-count indictment with (1) mail fraud in violation of 18 U.S.C. § 1341; (2) structuring to evade currency transaction reports in violation of 31 U.S.C. § 5342(a)(3); (3)–(4) false statements in violation of 18 U.S.C. § 1001; (5) corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Laws in violation of 26 U.S.C. § 7212(a); (6) tax evasion for the year 2011 in violation of 26 U.S.C. § 7201; (7) tax evasion for the year 2012 in violation of 26 U.S.C. § 7201; (8) obstruction of justice in violation of 18 U.S.C. § 1503; (9) perjury in violation of 18 U.S.C. § 1623; and (10) mail fraud in violation of 18 U.S.C. § 1341. (Superseding Indictment ("S2") 2, ECF No. 80.) Before the Court is the Government's remaining motions *in limine*. (Government's Motion *In Limine* ("Govt. Second Mot."), ECF No. 128; Government's Motion *In Limine* ("Govt. Third Mot."), ECF No. 129.) For the reasons set forth below, the Government's motions are granted or otherwise moot.[1]

---

[1] This Court's January 18, 2018 Opinion and Order addressed the advice of counsel issue raised in the Government's third motion *in limine*. *See United States v. Scali*, 16-CR-466, 2018 WL 461441 (S.D.N.Y. Jan. 18 2018).

1

## **LEGAL STANDARD**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine.*" *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y.2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139 (quoting *Luce*, 469 U.S. at 41, 105 S. Ct. at 163)).

The Federal Rules of Evidence provide that only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401 (a)–(b). Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir.1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir.2008).

2

## DISCUSSION

The Court assumes familiarity with the facts and allegations in this case. *See e.g., United States v. Scali*, 16-CR-466, 2018 WL 369195 (S.D.N.Y. Jan. 9, 2018). The Court consolidates the Government's two Motions which, in aggregate, raise four issues. The Court takes each in turn.

### Defendant's Cross-Examination of Julie Allsman

The Government's motion to preclude the Defendant from cross-examining Julie Allsman with respect to the internal deliberations of the S.D.N.Y. Grievance Committee is granted.

Julie Allsman serves as counsel to the Committee on Grievances for the United States District Court for the Southern District of New York. In May 2014, the S.D.N.Y. Grievance Committee disbarred the Defendant after he failed to respond to an Order to Show Cause. On June 4, 2015, the Defendant filed a motion seeking reinstatement to the S.D.N.Y. Bar. In support of the motion, the Defendant filed an affidavit (the "Scali Affidavit") in which he stated that his suspension from the New York Bar was based on his non-cooperation in the investigation of a matter that had nothing to do with his law practice. (Govt. Second Mot. 1–2.) The Scali Affidavit forms the basis of Count Eight and Nine of the Second Superseding Indictment.[2]

The Government expects Allsman to testify about the background and function of the S.D.N.Y. Grievance Committee, how the committee conducts disciplinary actions against attorneys, and her role in receiving, investigating, and presenting attorney disciplinary referrals to the Committee. Allsman is also expected to testify about the facts of the Defendant's

---

[2] Counts Eight and Nine charge the Defendant with obstruction of justice and perjury in violation of 18 U.S.C. § 1503 and 18 U.S.C. § 1623 respectively.

3

disciplinary proceedings as they relate to the federal criminal trial based on her personal knowledge. (*Id.* at 2–3.) The Government affirmatively asserts that it will not elicit testimony regarding Allsman's work product including memorandum prepared by Allsman for review by the Committee, discussions or votes among Committee members, or information revealing the internal deliberations of the Committee, or privileged communications between Allsman and the Committee. (*Id.* at 3.)

The Government argues that the Defendant should be precluded from inquiring into the internal deliberations of the S.D.N.Y. Grievance Committee because such testimony is irrelevant to the obstruction of justice and perjury charges in Count Eight and Nine. The Government also posits that such inquiries be precluded because they would impinge on the attorney-client privilege, the judicial deliberative privilege, and exceed the scope of the witness's testimonial authorization.[3] The Defendant argues that the internal deliberations of the S.D.N.Y. Grievance Committee are relevant to the materiality and influential capacity of the Scali Affidavit at issue in the obstruction of justice and perjury charges. (Def. Response to "Allsman" Motion *In Limine* ("Def. Second Opp.") 3–4, ECF No. 130.)

The Government's motion is granted because the subjective materiality or influential outcome of the Scali Affidavit is irrelevant to the obstruction of justice and perjury charges in Count Eight and Nine. It is well settled that in both the obstruction of justice and perjury

---

[3] The Government served a request for testimony from Allsman pursuant to the Guide to Judiciary Policy. The Government received a response from the S.D.N.Y. District Executive, explaining that Allsman should limit the scope of her testimony to the facts that led to Defendant's discipline including the order denying his motion to vacate the disciplinary order. The District Executive also prohibited Allsman from providing testimony that would reveal any internal deliberations of the Committee." (Govt. Second Mot. 4.) Further, the District Executive instructed Allsman that she must limit her testimony "so as not to reveal information that is work product and/or protected by the attorney-client privilege." (*Id.*)

4

contexts the materiality of the endeavor or statement requires an objective inquiry. In the obstruction of justice context, under 18 U.S.C. § 1503, "the endeavor must have the natural and probable effect of interfering with the due administration of justice." *United States v. Aguilar*, 515 U.S. 593, 599 (1995) (quotations and citations omitted). Similarly, under 18 U.S.C. § 1623, a statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it is addressed." *United States v. Forde*, 740 F. Supp. 2d 406, 412 (S.D.N.Y. 2010) (quotations and citations omitted). The logical consequence of this objective inquiry is the insignificance of a statement's actual effect on the adjudicating or investigatory body. *See United States v. Santiago*, No. 13-CR-39 (CM), 2014 WL 4827883, at * 5 (S.D.N.Y. Sept. 26, 2014). Thus, the Government's motion is granted because the internal deliberations of the S.D.N.Y. Grievance Committee concerning the materiality of the Scali Affidavit are irrelevant to the objective nature of the materiality inquiry.

### Statements made to Law Enforcement Agents by Third Parties

The Government's motion to preclude the Defendant from introducing, through notes or reports from law enforcement agents, any hearsay statements of Michael Byrd (a broker in the failed land transaction at issue in Count One) or Harry Freed (a representative of Opal Industries) is granted.

The Defendant intends to call Byrd, Freed, and the government agents who interviewed them for the purpose of showing that the Defendant was not engaged in mail fraud, but rather, acted pursuant to an agreement which allowed him to withdraw the funds at issue in Count One. (Def. Response to Government's Third Motion *In Limine* ("Def. Third Opp.") 4–5, ECF No. 131.) The Defendant also intends to introduce the notes taken by law enforcement agents containing statements Byrd and Freed made to those agents. The Defendant anticipates arguing

5

that Byrd told him that the "investors" in the land transaction in Count One had agreed to Opal's distribution of one-half of the funds they invested. Law enforcement agents interviewed Byrd and Freed in connection with the failed land transaction.

The Government's motion to preclude the Defendant from eliciting hearsay evidence from the law enforcement notes or reports is granted.[4] Out of court statements offered for the truth of the matter asserted constitutes hearsay, and such statements are inadmissible absent an exception. Fed. R. Evid. 801, 802; *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991). Further, when, as in the instant case, a party intends to submit an out of court document which itself contains out of court statements, the party must resolve each level of hearsay. *See Rodriguez v. Modern Handling Equipment of NJ, Inc.*, 604 F. Supp. 612, 622 (S.D.N.Y. 2009) ("Double hearsay is not admissible unless each level of hearsay is covered by an exception to the hearsay rule").

Here, the Defendant argues that the agent's notes are admissible as business records pursuant to the Federal Rules of Evidence Rule 803(6), pursuant to Rule 804, or in the alternative, that the notes and the information contained therein are not being introduced to prove the truth of the matter asserted, and thus, do not constitute hearsay. (Def. Third. Opp. 5–6.) The Defendant's position is unavailing. First, the contents of the interview notes do not overcome the bar against hearsay. Assuming, *arguendo*, that the notes are in fact business records under Rule 803(6), the Defendant has not provided an exception, nor has the Court found one, to

---

[4] The Court reserves judgment on whether or not it would be inappropriate for the law enforcement agents to testify from their personal knowledge about the statements made by Byrd or Freed in the event these statements are not offered for the truth of the matter asserted. It very well could be that the statements made to the agents are admissible because they are not being offered for the truth of the matter asserted, but rather to show the Defendant's state of mind or another permissible use. *See United States v. Certified Environmental Services, Inc.*, 753 F.3d 72, 89 (2d Cir. 2014). That question, however, is not squarely before the Court.

6

admitting the hearsay contained within the notes. *United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (noting that a Defendant "must establish not only that the report falls within an exception to the hearsay rule, but also that [the third party] statement is covered by such an exception"); *Beechwood Restorative Care Center v. Leeds*, 856 F. Supp. 580, 588–89 (W.D.N.Y. 2012) ("although an official's reliance on hearsay in preparing a report does not necessarily preclude the admission of the officials' conclusions contained in the report, that does not necessarily mean that the hearsay statements themselves can come into evidence") (internal citations omitted). Thus, because the notes contain hearsay that does not fall under an exception, the Defendant is precluded from admitting them.

Second, there is no indication that Byrd or Freed are unavailable within the meaning of Rule 804. The Defendant has not provided any reasons why the declarant is unavailable, but rather merely theorizes possible situations in which Byrd or Freed would be unavailable. (Def. Third Opp. 5 (noting that the witnesses would be unavailable "if Freed, who resides in Pennsylvania, cannot be reached by a subpoena and commanded to appear or if Byrd, who has cooperated with the government, evades service").) Without more, the Court cannot find that Byrd or Freed are unavailable.

Third, the Defendant's assertion that the interview notes are not being introduced to prove the truth of the matter asserted is unconvincing. The Defendant argues that he intends to use the notes to show that Byrd and Freed "made those statements to the federal agents" and to show "why [the Defendant] behaved as he did." (Def. Third Opp. 6.) However, in order to admit the notes which contain the statements by Byrd and Freed, the Defendant must overcome the bar against hearsay because the notes are necessarily being offered for the truth of the matter asserted—namely that Byrd and Freed in fact did make the statements contained therein.

The Defendant argues that the police officer's notes are admissible as business records under Rule 803(6). Although these police notes appear to satisfy the requirements of Rule 803(6), the notes offered by the Defendant suffer from a fatal flaw: they contain information offered by Byrd and Freed who were not acting in the regular course of "business." *See* Fed. R. Evid. 803(6), advisory committee notes (explaining that when "the supplier of the information does not act in the regular course, an essential link is broken"); *Gray v. Busch Entertainment Corp.*, 886 F.2d 14, 15–16 (2d Cir. 1989) (noting that since the report in question contained information supplied by a person not acting in the regular course of business, there was no basis for admitting the statement of that third party under Rule 803(6)). Here, the notes contain information provided by Byrd and Freed, both of whom did not have a duty to report the disseminated information to the agent. Thus, although the notes may be admissible under Rule 803(6), the statements that the Defendant intends to admit as business records, which essentially encompasses the entirety of the notes, are not.

**Testimony Beyond the Scope of Government's Direct Examination**

The Government moves to preclude the Defendant from cross-examining the Government's witness, Jared Scharf, on matters beyond the scope of direct examination. (Govt. Third Mot. 5–6.) The Government intends to question Scharf for the purpose of eliciting non-privileged testimony as to the information and documents provided by the Defendant to Scharf for the purposes of drafting correspondence to the IRS with regards to Counts Three through Seven of the Second Superseding Indictment.[5] (Govt. Third Mot. 6.) The Government is

---

[5] These counts charge the Defendant with making false statements to an IRS agent on two occasions, tax evasion for the years 2011 and 2012, and corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue Laws (collectively the "tax related counts").

concerned that defense counsel wishes to elicit testimony from Scharf that would go well beyond the scope of the Government's anticipated narrow direct examination, including the purported legal advice from Scharf upon which Defendant claims to have relied. (Govt. Third Mot. 6.) Consequently, the Government submits that the Defendant be required to call Scharf as a witness in his case in chief rather than delve into testimony that is beyond the scope of the Government's direct examination of Scharf.

The Defendant argues that that he should be allowed to question Scharf and not be compelled to recall him because it would unduly and unnecessarily inconvenience the witness and detract from the truth-telling function. (Def. Third Opp. 6–7.) Further, since the issues the Defendant expects to raise with Scharf are not "far afield" from those the Government intends to pursue during their examination, Rule 611(b) should not be enforced as to confuse the jury and make the trial less efficient. (Def. Third Opp. 7.)

The Government's motion is granted. Traditionally "counsel are entitled to considerable leeway in cross-examination," *United States v. Birnbaum*, 337 F.2d 490, 498 (2d Cir. 1964), however, "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b); *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012). This Court has broad discretion in determining the scope of cross-examination. *United States v. Koskerides*, 877 F.2d 1129, 1136 (2d Cir. 1989); *United States v. Whitten*, 610 F.3d 168, 183 (2d Cir. 2010). In this case, the Government will question Scharf about information and documents the Defendant provided to Scharf for the purposes of drafting correspondence to the IRS. These documents are relevant to Counts Three through Seven (collectively "the tax related counts"). Defense counsel intends to question Scharf on the legal advice he gave Defendant with respect to the underlying actions of

the same tax related counts. The intended questioning falls outside of the scope of the Government's direct examination. First, the subject matters are patently different. The Government intends to elicit testimony concerning documents and information provided to the IRS while Defense counsel intends to question Scharf on legal advice he provided to the Defendant. Although both lines of questioning concern the tax related counts, the underlying subject matter (documents as opposed to legal advice) is different. Second, there is a serious risk of confusing the jury because not only will they hear testimony regarding unrelated subject matters, but they will also hear evidence regarding a defense theory for the first time during the Government's case in chief. Further, the Defendant has not provided a reason why Scharf cannot be recalled to testify during his case in chief. *See United States v. Martinez-Montilla*, 82 F. App'x 53, 55–56 (2d Cir. 2003). Thus, the Government's motion to preclude the Defendant from cross-examining Scharf beyond the scope of direct examination is granted.

### Cross-Examination of Scali and Marital Privilege

The Government's motion to cross-examine the Defendant, should he choose to testify, concerning his concealment of his suspension from the New York Bar and related convictions for unauthorized practice of law from his spouse is granted. The Government intends to ask the Defendant if he ever told his wife about his suspension from the New York Bar or the related misdemeanor convictions. His wife previously testified under oath at two bail hearings before this Court. At the two bail hearings, neither the Defendant nor his wife asserted a spousal privilege, and the Defendant's wife testified, while under oath, that she was unaware of the Defendant's suspension from the New York State Bar or the related misdemeanor conviction. (Gov. Third Mot. 8; Govt. Reply in Supp. of Third Motion *In Limine*, ("Govt. Third Mot. Reply) 9–10, ECF No. 135.) The Government posits that such evidence is relevant to Count Ten,

which charges the Defendant with mail fraud in connection with his alleged unlawful law practice, and is also relevant to the Defendant's credibility as a witness.

The Defendant appears to concede the relevancy of the testimony, and argues that such questioning should be precluded because it is protected by the spousal privilege. (Def. Third Mot. 8–9.) Here, Defendant's communications are arguably covered by the marital communications privilege. *See In re Reserve Fund Securities and Derivative Litigation*, 275 F.R.D. 154, 157 (S.D.N.Y. 2011) (describing two types of marital privilege: adverse spousal testimony privilege and the marital communications privilege). Assuming, *arguendo*, that the privilege applies, the Defendant waived the marital privilege when his wife testified in open court, in the Defendant's presence and without objection, about her communications, or lack thereof, with the Defendant concerning his alleged practice of law while suspended. *See United States v. Fisher*, 518 F.2d 836, 840 (2d Cir. 1975) ("The spousal privilege is waived by failure to object when the spouse is called to the stand"); *Betz v. Legal Aid Soc.*, No. 89 Civ. 3401 (RO), 1990 WL 164814, at *1 (S.D.N.Y. Oct. 18, 1990) ("A husband who fails to object when his wife is called to testify waives the spousal privilege"); *cf. United States v. Taylor*, 92 F.3d 1313, 1331–32 (2d Cir. 1996) ("knowledge of the presence of a third party defeats the application of the spousal privilege"). Thus, the Government's motion is granted.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* are granted. The Clerk of Court is respectfully directed to terminate the motions at ECF Docket Number 128 and 129.

Dated: January 29, 2018  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge